Thank you, Your Honor. Good morning. May it please the Court. In entering judgment for Hawks Prairie, the District Court awarded almost $16 million for injury Hawks Prairie did not suffer to a development it never built on land it no longer owned. Our briefs present several independent grounds for why this judgment should be reversed. I would like to focus on three of those arguments. First, Washington law precludes Hawks Prairie from suing to enforce a breach of the radius restriction that occurred after it sold the benefited land. Counsel, help me on something. It looked to me when I read the contract and addendum as though the parties anticipated a long time before development was financed and achieved or even begun. I think they have 6 years and 10 years in paragraph 7 of the addendum. Why would it be an anticipatory repudiation if they hadn't done anything in 5 years? Well, actually, the requirement was for – there were certainly milestones for build-out, 4, 6, 8, and 10 years. In the first 4 years, 400,000 square feet was supposed to be built or at least Hawks Prairie was supposed to use its commercially reasonable best efforts to start the building of 400,000 square feet. And that milestone clearly was not met. That's right. And the contract says it may not be. And if it doesn't, it specifies exactly what happens. Correct. There is a sole remedy provision in the contract. It doesn't say it's a repudiation. It just says here's what happens if they haven't done anything in so many years. Yes, but contract law principles still apply even though anticipatory repudiation isn't expressly bargained for in the contract. Just like mutual mistake, impracticability, duty of good faith, and fair dealing, those principles don't have to be in the contract. Right, but you can still draw a contract so that it isn't any of those things so long as the contract is provided a longer time. Correct, but a party can anticipatory repudiate a contract on day one. A lot of contracts have a bankruptcy clause. They say if you file for bankruptcy, it's treated as a breach. Correct. This one doesn't as far as I can tell. Right, but that wouldn't be required under the rules of bankruptcy law. Moreover, counsel, you're forgetting about Washington law's requirement of materiality, are you not? Don't we have to determine whether the clause that you claim is breached is material? And if not, doesn't that affect the outcome as far as an anticipatory breach? It does, Your Honor. In order for anticipatory repudiation to occur, a material term in the contract has to be breached. We believe that the record supports that the development obligations were material. They're expressly recited as being significant to Cabela's entering into this contract, and they were the very reason that Cabela's agreed to the radius restriction. But, you know, forgive me, I practiced real estate law for 37 years, and your client got a really sweet deal. You got $5 million, you got 27 acres. How can that not be material? I mean, they wanted you there. You were an anchor tenant. It was really important. But what they bought was this radius restriction, and you didn't keep it. You conceded that. Correct, but the purpose of the radius restriction was to benefit the surrounding land on the theory that it was going to be developed. We were the anchor tenant. Obviously, we would attract customers to the development that was supposed to be built. Would that have applied to another party if that party took over the land that Hawks Prairie owned? Absolutely. If they had sold the land on day one after we… The radius restriction would have. Correct. The radius restriction certainly would have been enforceable by Home Street, in this case, had they chose to enforce it. But that simply didn't happen here. I guess I struggle with the same issues that my colleague does, and that is that whatever else this contract is, it did seem to anticipate, maybe not the 2008 crash, if you will, but it certainly anticipated what the parties intended to do in the event of a failure to keep the radius restriction. On the other side, a failure to build things out at a period of time. You said exactly what was going to happen. Why shouldn't we simply apply the terms of the contract? That's what you all negotiated, isn't it? Well, again, there was no effort at all by Hawks Prairie to develop anything. So what? When I look at paragraph seven here, it says that they agreed to start construction of 400,000 square feet within six years, which had not yet been achieved. And they say that they've got eight years for more. And then there's a 10-year provision. And it says there's no penalty to seller for failure to commence construction within the first six years, provided the seller, and this provided clause is the only one you've argued, really, provided the seller agrees to use its commercially reasonable best efforts to start construction of the initial 400,000 square feet within four years. Now, let's say they breached that. The next sentence says, buyer's sole remedy for seller's breach of the foregoing obligation of seller to commence construction is an increase in the credits to be given buyer in the event buyer does not operate its store for the full 12-year period. Well, gee, I look at the word sole, and it means to me, that's it, no others. So why are you seeking another remedy? Well, again, Your Honor, we're not seeking a remedy here, and that's the important distinction. You are. You're trying to get out of the contract. Anticipatory repudiation is something that excuses us from performance. It is not a remedy. Clearly, Paragraph 7 prohibits us from suing them, from seeking to enforce the provision. But the question is, are we excused from performance because of their repudiation of the contract? Excuse of performance is not a remedy. It's a right that exists in connection with every contract. And your theory is it's entirely outside the language of the contract. Correct.  That's correct, just as in hemisphere loggers. So why would they have bargained for and paid for 10 years to develop when, in your interpretation, they only have four and then they're treated as repudiating? Well, they did have 10 years to develop the full 1 million square feet. There were construction milestones. I think it was 400,000 the first four years, 600,000 by year six, 800,000 by year eight. That's easy enough to write. You can write construction milestones. Many contracts do. Yes. But that's not how this reads. Well, I mean, that is how it reads. I mean, that is the obligation. What words? The construction milestones to build out a certain number of square footage in year six, eight, and 10. Show me the words. It's in Paragraph 7. I'm looking at it. Show me the words. I don't have it here in front of me, Your Honor. I'm sorry. But I can. I have it in front of me. I'll certainly pull it for rebuttal. But, again, the point, Your Honor, is asserting anticipatory repudiation defensively as an excuse to continue performance, which is all we're doing in this case, is fundamentally different in kind from affirmatively seeking a remedy against Hawks Perry. That's what Paragraph 7 prevents us from doing. Let's be candid here. Since the contract said they had an extended period of time to build out the balance of the shopping center and you confessed that you breached the radius restriction, aren't you in breach of the contract as opposed to them, since they didn't breach within the time period that the contract calls for? Well, again, we do not believe that we breached the radius restriction because the contract was already repudiated. Come on, come on, come on. Other than your anticipatory breach, you're in breach, right? Correct. If there is no anticipatory breach, you breached it. Correct. I agree with that. My understanding is you conceded that. Yes, Your Honor. They also conceded they didn't build out the shopping center. So your whole case rises and falls on whether or not this is an anticipatory breach, right? Well, and also on whether they have standing to enforce the radius restriction. That's a stretch. But the reality is you're sophisticated people. They're sophisticated people. You had a contract. You spent some time negotiating it. They were the lesser financially backed party. They were the weaker party. You all negotiated a terrific contract for yourselves. Good for you. But the reality is you can't now turn around and say, hey, you know what? We don't like it anymore. Let's just leave it. Aren't you bound by your contract? We are bound by the contract except for the fact that they're also bound by the contract and they didn't comply with it. They never built out a single square foot of the property in four years. I understand. But you breached the radius restriction before they had under the terms of the contract to build out the rest of the center, right? That is true. But, again, anticipatory repudiation can occur on day one of the contract. It doesn't matter that they had additional time to build out. The question is did they take action sufficiently positive to indicate clearly and unequivocally that they either would not perform or could not perform? Do you have any case, either from this jurisdiction or any jurisdiction, that has the facts of this case where you could make out an anticipatory breach? Well, certainly in identical case, no. In identical case. No, Your Honor. What was the action they took that amounted to repudiation, the precise action? There are four things. One is the failure to start construction on the first 400,000 square feet of the property. That occurred on November 2011. That's when that obligation was due. But also on June 8, 2011, the bankruptcy court confirmed a reorganization plan for the sale of the property, which would completely disable them from being able to comply with their development obligations. I don't think. I see what you mean. And then the third, you know, on April 18, 2012, the property was sold to Home Street pursuant to order of the bankruptcy court, which by operation of law, because Hawkes Prairie was liquidating, resulted in a de facto termination of the contract as of the filing of the bankruptcy, which would be August of 2010. Didn't they have this deal as part of the plan that they keep whatever rights they have in the contract with Cabela's? Yes. They purported to retain the right to sue for breach of the radius restriction. But, again, that's not enforceable because when they don't own the land that the restriction is designed to benefit, the Washington courts hold that they have no interest in enforcing it. I think it was broader than that. Didn't they keep broader rights than that to whatever rights there were against Cabela's? Well, they retained the rights in the litigation. They retained the right to sue for breach of the radius restriction. They may have retained the rights related to the continuous operation clause, but obviously that's not an issue because Cabela's continues to operate the store. But clearly you've got four independent acts that positively indicate that they either will not comply with their obligations or are unable to comply with their obligations. That's all you need for anticipatory repudiation. The fact that they had more time to perform in the future is irrelevant if those acts are sufficiently positive and clear to indicate that they either will not perform or are unable to perform. That gets back to the case law I asked for. Is there anything from Corbin or Williston or any contract treatise that has the facts of this case where you can make out an anticipatory breach? Where the contract itself contemplated certain time periods for them to perform, the time period hadn't passed. You say, nonetheless, even though you had breached your portion of it, that somehow they were an anticipatory breach. Well, in Hemisphere Loggers, for example, Your Honor, the holding there was at a facially mandatory cure period, which required 20 days' notice for cure before anybody could sue for breach. And there the court said that the cure period was inapplicable to breaches that constituted anticipatory repudiation. The court said because of Hemisphere's unretracted repudiation, Everett had the right to treat the contracts as breached and therefore had no obligation to offer a 20-day cure period as provided by Paragraph 20. And that was also an exclusive requirement of the contract. You've got the parties mixed up there, don't you, in terms of who had the cure period? Well, no, but the point is there was a mandatory cure provision in the contract, and the court held that the party did not have to comply with it because the other party anticipatorily repudiated the contract. And that's our position here. How is this a cure period? It doesn't look like a cure period. It just looks like they plan or hope to begin building in four years, but they may not, and if they don't, all Cabelas gets is a credit. It's not treated as a breach. There are various ways to have anticipatory repudiation. One is to say I'm not going to perform this contract. I deemed it not to be in my interest or to be impossible or whatever. Another way is to create conditions where it can't be performed, but this one, as far as I can tell, could still be performed. It's just that Cabelas would have some more credits. Well, it could not be performed, clearly, once they sold the property to Holmstreet, and that was the day before Cabelas opened the store. Therefore, they anticipatorily repudiated the contract before we violated the ratings restriction. That's the amount of time. Your time is up. Thank you very much, counsel. Let's hear from the appellee. May it please the Court, Arnie Willig on behalf of Hawkes Prairie, the appellee here. Your Honors, I think this case really does come down to what the express terms of the contract state. What Hawkes Prairie gave to Cabelas was very valuable I-5 frontage real property that at the time Cabelas valued conservatively at $19 million. Why isn't the sale to Holmstreet the repudiation? I believe counsel has the dates wrong. As the lower court record reflects, the sale to Holmstreet, the bill of sale is dated April 25th of 2012, and the breach, which was the opening of the Tulalip store, occurred on April 19th of 2012. So there is absolutely no dispute that at the time that the sale occurred to Holmstreet that Cabelas was in actual breach of the contract. What was the date that the sale was confirmed by the bankruptcy court? It was prior to that. The bankruptcy court approved the notice of settlement. Why isn't that event a breach? Because at the time Cabelas had, well, it goes back to what the documents say. What Cabelas' argument is is that the memorandum of agreements is what was transferred to Holmstreet Bank, and that memorandum of agreements is found at ER 932. That memorandum of agreements was simply a notice to any successor of interest in the Cabelas property. It was essentially an option putting anyone on notice that in the event of a breach of one of these two provisions by Cabelas, either the radius restriction or the continuous operation provision, that Hawkes Prairie may have the ability to repurchase that property. And I think that the agreement itself states at paragraph 5 that it is for informational purposes only.  In your bill of sale, you transfer that memorandum, which, by the way, includes other conditions with respect to the property, such as roadway construction and easement, because that was transferred to Holmstreet Bank. That divests Hawkes Prairie of standing in this lawsuit. But what they do is they really act inconsistently with that position because Holmstreet Bank was a party to this litigation. And as part of that settlement agreement, Cabelas agreed to have Hawkes Prairie withdraw from the litigation. Now, if the purpose of the declaratory judgment action was to invalidate this radius restriction as an illegal penalty, then why would they let Hawkes Prairie out, who is, in their view, the true party in interest in the litigation? But they didn't. They agreed to release Holmstreet Bank. They received notice of this settlement from the bankruptcy court, and they proceeded for another year's worth of litigation under the theory that the radius restriction was an illegal, unenforceable, liquidated damage provision, which, again, is contrary to what the contract says. It's simply a repayment provision. In exchange for this $24 million worth of value, Cabelas was only to really pay or do two things, two promises. One, continually operate their store for 12 years, and two, not open another competing store in western Washington for five years. Going back to the contract, it appears that because of the radius breach that your client was entitled to repayment of the $5 million. But wasn't the district court wrong in giving you the value of the land as opposed to what Paragraph 6 called for, which was that you had a 60-day option to purchase the real property improvements at fair market value minus the fair market value of the real property at ER 1096? Isn't that what the court should have done? No, Your Honor. The court eventually determined, after a full reading of Paragraph 8, where it's of the addendum that says, in the event of a breach of the radius restriction, if a competing store opens, whether or not seller, in this instance Hawks Prairie, seeks damages or an injunction, buyer shall repay seller the money seller paid to buyer pursuant to Paragraph 5, which is the down payment or the $5 million of this addendum, and seller shall have the right to terminate and repossess the real property as set forth above in Paragraph 6. Okay, that's what I'm talking about. Right, and that's a summary. Paragraph 6 contains a summary of options for Hawks Prairie in the event of a breach. It can either do what happened in this case, value the real property only at the time of the breach, in this case, April 19, 2012, or use that value as a credit towards purchasing the building, the Hawks Prairie, or excuse me, the Cabela's store, that is situated on the property. So from your perspective, either you can follow Paragraph 8, which you believe is what the court did, the district court, or you can follow Paragraph 6, where you would use the value of the land as a credit toward the purchase of the improved land. Well, Paragraph 6 sets out the two options for repayment to Hawks Prairie, and I think what the record shows below, what Cabela's had tried to argue below was that that was a Scribner's error, that this terminate and repossess language should not be in Paragraph 8. I understand. And in support of that, they attached the declaration of their in-house counselor, who was their primary witness and chief architect of this document. And at ER 877, his declaration attaches a draft of the party's agreement, within which you can see the evolution where Hawks Prairie at one point wanted a 20-year continuous operation provision that was then reduced to 12. And in the event of a breach, Cabela's was to forfeit the entire property, which apparently they realized at some point that would have included the building. And so what Cabela's did is said, look, let us at least get credit for the building that we put on place up there. So that's how that evolved, and that's what the record reflects down below as to. That's Paragraph 6 then, basically, right? Well, that's eventually how Paragraph 6 came to be. Is the deal, as you understand it, a breach at any time as Paragraph 8, but breach within the first six years gives the seller two alternative remedies? No. Paragraph 8 is a standalone with respect to the radius restriction. It does incorporate the repayment provision of Paragraph 6, which is the continuous operation provision. So rather than set out that. So 8 is limited to the radius provision. Pardon me? 8 is just for the radius. Yes, exactly right. So 8 is the radius restriction, which is Cabela's not opening a competing store for the five-year period from the date of the opening of the store in Lacey. And you believe that the district court tracked Paragraph 8? Yes. In fact, Cabela's made similar arguments to the jury in this case, at which point when Mr. Kelsey was questioned by counsel, he had testified that the purpose of the radius restriction, or that we were there today to determine essentially the extent of the damages on the breach of the radius restriction. So the district court just used 8. It didn't use subparagraph 1 of Paragraph 6? No. Forgive me, Your Honor. The Paragraph 8 deals with the radius restriction. Once that was breached by the opening of the Cabela's store, then we look to Paragraph 6 for the repayment provisions. Because the repayment provisions in Paragraph 6, as referenced, are set forth the two alternatives, which is. I understand that, and it looks to me like subparagraph 1 of Paragraph 6 is the one that was used. Have I got that right, or have I confused that? Exactly right. Subparagraph 1. How did they get there when Paragraph 8 says. Shall terminate and repossess the real property as set forth above in Paragraph 6. So then you go to Paragraph 6, and you see in the event of a breach of this provision by the buyer within the first six years, and that was dealing with the construction. Buyer shall at seller's option either 1 pay to the seller an amount equal to the fair market value of the real property and refund the $5 million contribution made to buyer pursuant to Section 5 herein, or to provide seller a 60-day option to purchase the real property and improvements. The improvements was the building at fair market value minus the fair market value of the real property and refund the $5 million contribution. That's from Paragraph 6 you're reading, right? That's correct, Your Honor. I'm having trouble seeing how the district court gave both the remedies in 8 and in 6. Well, Paragraph 8 states that Cabela shall not open a competing store within five years in the delineated counties. And then it says in the event a competing store opens, which occurred, then it says whether or not seller seeks damages or an injunction, buyer shall repay seller the money seller paid to buyer pursuant to Paragraph 5 of this. That's the $5 million so far, right? Right. Repay the money. And seller shall have the right to terminate and repossess the property, the real property as set forth above in Paragraph 6. That gets back to my question that we started with, which is Paragraph 8 really doesn't call as far as getting the property back is concerned. It doesn't provide anything separate. It refers back to Paragraph 6. And it seems to me that in Paragraph 6 you get your $5 million. But after that, you're really talking about a situation where the Hawks Prairie has a 60-day option to purchase the real property improvements at fair market value minus the fair market value of the real property, which is what you mentioned was the evolution of the agreement. It gives two options, Your Honor. One is to value the real property only as of the date of the breach. So the parties had enough foresight at least to figure the market's going to go up and down. We'll value the real property at the time of the breach. Or in the event Hawks Prairie wanted the building itself, they provided an option or a mechanism for which that can be valued. And Cabela's could be credited for the amount it spent to build its building. Okay. So let's say you're right. Didn't the district court simply say you're entitled to a certain amount of money? No. The district court said that we were entitled to repayment of the $5 million plus the value of the property at the time of the breach, which was Hawks Prairie's election in which it elected to do. And where does that come in Paragraph 6? Where do you get that out of Paragraph 6? From that subsection 1 of Paragraph 6 where it says, in the event of a breach of this agreement by a buyer within the first six years, buyer shall at seller's option either one, pay to seller an amount equal to the then fair market value of the real property and refund the $5 million contribution made to the buyer pursuant to Paragraph 5 herein. And that's where the $5 million payment and the value of the real property, which as of the date of the breach, is established. I see. So you're saying the terminate and repossess language means you don't have to just take the Cabela's store. Instead, you can take the $5 million plus the fair market value of the real property. Right. That's correct because as originally drafted, it would have allowed Hawks Prairie to take the entire store as well. And Cabela's didn't want that, of course. If that was elected, they wanted the value of the improvement, which was the building. And so they built that in essentially for their own protection. So rather than forfeit the entire property, the parties developed and agreed to these two separate options. Let's assume if you're right, fine. But if you're not correct, then under the second option, then basically you've got that 60-day purchase period, right? That's correct. Fair market value of the property less the value of what you gave, and you can buy it for the difference. That's correct. One other point that I wanted to clear up, which is with respect to the fact that the radius restriction attaches to the adjoining property, and so whoever the subsequent property owner is that Council had mentioned, again, the agreement itself was purely personal as to Hawks Prairie and states as much. The Hawks Prairie, that the burdens in the agreement are fully assignable and transferable in part to Hawks Prairie. I think that one of the distinguishing matters of this case that Cabela's does not want to acknowledge is the fact that these agreements do not really touch or concern or restrict in any way either piece of property. They are really contractual obligations of the party. So this is not a covenant running with the land under Washington law? No, it is not, Your Honor. I mean, there's aspects to it with respect to the fact that, again, I think as the District Court aptly pointed out in its ruling, that if Cabela's were just to close the store, it still would be contractually obligated to not open another store in western Washington for the five-year period. In addition, if they did close the store, that would be a separate breach of the continuous operation provision. Any other questions of my colleagues? Thank you very much. Counsel, your arguments are very helpful. We appreciate it. The case just argued is submitted. We will get you an answer as soon as we can.
judges: Kleinfeld, Tashima, M. Smith